# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| PAUL SPIVAK, | ) | Case No. 1:13-cv-1342-DCN |
| | ) | |
| Plaintiff, | ) | Judge Nugent |
| | ) | |
| v. | ) | Magistrate Judge Baughman |
| | ) | |
| THE LAW FIRM OF TRIPP SCOTT, P.A., | ) | **MOTION OF DEFENDANTS THE LAW** |
| *et al.,* | ) | **FIRM OF TRIPP SCOTT, P.A., JOHN M.** |
| | ) | **MULLIN, ESQ., MEGAN L. JANES,** |
| Defendants, | ) | **ESQ., TANYA BOWER, ESQ., AND** |
| | ) | **PHYLLIS E. FERRANTE TO DISMISS** |
| | ) | **PURSUANT TO FED. R. CIV. P. 12(b)(2)** |
| | ) | **FOR LACK OF PERSONAL** |
| | ) | **JURISDICTION** |

Defendants The Law Firm of Tripp Scott, P.A., John M. Mullin, Esq., Megan L. Janes,

Esq., Tanya Bower, Esq., and Phyllis E. Ferrante, by counsel and pursuant to Rule 12(b)(2) of the

Federal Rules of Civil Procedure, move this Court for entry of an Order dismissing them from this

action for lack of personal jurisdiction.

A supporting memorandum accompanies this motion.

Respectfully submitted,

  /s/ *Jeremy Gilman*
Jeremy Gilman (0014144)
Allison E. Taller (0085206)
BENESCH, FRIEDLANDER,
    COPLAN & ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, OH  44114-2378
Phone:        (216) 363-4500
Facsimile:    (216) 363-4588
Email:        jgilman@beneschlaw.com
              ataller@beneschlaw.com

*Attorneys for The Law Firm of Tripp Scott,*
*P.A., John M. Mullin, Esq., Megan L. Janes,*
*Esq., Tanya Bower, Esq., and Phyllis E.*
*Ferrante*

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

1.  Brief Statement of the Issue to be Decided and Summary of the Argument ................... 1

2.  Facts ................................................................................................................................ 2

    a.  The Florida Action ................................................................................................. 2

    b.  This Action ............................................................................................................. 3

3.  Law ................................................................................................................................. 5

4.  Argument ........................................................................................................................ 8

    a.  The Moving Defendants are Not Subject to this Court's General Jurisdiction .... 9

    b.  The Moving Defendants are Not Subject to this Court's Specific Jurisdiction .. 10

    c.  The Moving Defendants are Not Subject to Ohio's Long-Arm Jurisdiction ...... 16

5.  Conclusion ..................................................................................................................... 17

LOCAL RULE 7.1(F) CERTIFICATE ................................................................................. 18

CERTIFICATE OF SERVICE .............................................................................................. 18

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Bey v. State of Ohio*, No. 1:11-cv-01048, 2011 U.S. Dist. LEXIS 101762 at * 5 (N.D. Ohio Sept. 9, 2011). ...............................................................................................................8

*Bird v. Parsons,* 289 F. 3d 865, 871872 (6th Cir. 2002) .............................................6

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-472, 475-476 (1985) ............... 7, 11-12, 14

*Brunner v. Hampson,* 441 F. 3d 457, 463 (6th Circuit 2006) ......................................5

*Cabell Fin. Corp. v. Gurr*, No. 1:12-cv-473, 2012 U.S. Dist. LEXIS 178082 at * 5 (N.D. Ohio Nov. 27, 2012) ...............................................................................................6

*Cadle Co. v. Schlichtmann*, No. 04-3145, 2005 U.S. App. LEXIS 2097 at *17-18 (6th Cir., Feb. 8, 2005).................................................................................................15

*Calphalon Corp. v. Rowlette,* 228 F. 3d 718, 721-723 (6th Cir. 2000) .................5, 7, 12-13, 15

*Conn v. Zakharov,* 667 F. 3d 705, 711-712 (6th Circuit 2012) ...................................6 7

*CompuServe, Inc. v. Patterson*, 89 F. 3d 1257, 1262-63, 1268 (6th Cir 1996) ....................7, 11

*Erie County Farmers' Ins. Co. v. Crecelius*, 171 N.E. 97, 97-98 (1930) ....................................15

*Estate of Thomson ex rel. Rakestraw v. Toyota Motor Corp.*, 545 F. 3d 357, 361 (6th Cir. 2008)..................................................................................................................6

*Filtrexx International, LLC v. Truelsen*, No. 5:12-cv-58, 2013 U.S. Dist. LEXIS 19536 (N.D. Ohio, February 13, 2012) ........................................................................13

*Hitachi Medical Systems America, Inc. v. St. Louis Gynecology & Oncology, LLC*, No. 5:09-cv-2613, 2011 U.S. Dist. LEXIS 17022 at * 22 (N.D. Ohio Feb. 22, 2011)...............12

*International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945) .............................................14

*Kerry Steel, Inc. v. Paragon Industries, Inc.,* 106 F. 3d 147, 151 (6th Cir. 1997) ............... 11-12

*LAK, Inc. v. Deer Creek Enter*, 885 F.2d 1293, 1300, 1303 (6th Cir.1989)........................ 12-14

*McMunigal v. Bloch*, No. 1:09-cv-01674, 2010 U.S. Dist. LEXIS 51329 at * 15 (N.D. Ohio Apr. 21, 2011)..........................................................................................12

*Miller v. AXA Winterthur Ins. Co.*, 694 F. 3d 675, 678, 680 (6th Cir. 2012) .........................5, 12

*Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co.*, 91 F. 3d 790, 793, 795-96 (6th Cir. 1996). ...................................................................................12

*Roop v. Walmart Corp.*, No. 4:10-cv-2769, 2011 U.S. Dist. LEXIS 17457 at * 2 (N.D.  Ohio Feb. 22, 2011) ...............................................................................8

*Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir.1982)..............12

*Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968) .............6-7, 13-15

## **Statutes**

Fed.R.Civ.P. 12(b)(2)................................................................................. 1, 4-5

R.C. 2307.382 ..........................................................................................6, 17

R.C. 2307.382(A)(1) ....................................................................................16

R.C. 2307.382(A)(2) ....................................................................................16

R.C. 2307.382(A)(3)(4)(6) and (7) ...............................................................17

R.C. 2307.382(A)(8) ....................................................................................16

R.C. 2307.382(A)(9) ....................................................................................16

R.C. 2307.382(5).........................................................................................16

R.C. 2323.52 ............................................................................................ 8-9

R.C. 2323.52(B) ............................................................................................8

RC. 2323.52(D)..............................................................................................9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

PAUL SPIVAK,                                    )    Case No. 1:13-cv-1342-DCN
                                                )
       Plaintiff,                           )    Judge Nugent
                                                )
   v.                                        )    Magistrate Judge Baughman
                                                )
THE LAW FIRM OF TRIPP SCOTT, P.A.,              )    **MEMORANDUM SUPPORTING THE**
*et al.*,                                       )    **MOTION OF DEFENDANTS THE LAW**
                                                )    **FIRM OF TRIPP SCOTT, P.A., JOHN M.**
      Defendants.                         )    **MULLIN, ESQ., MEGAN L. JANES,**
                                                )    **ESQ., TANYA BOWER, ESQ., AND**
                                                )    **PHYLLIS E. FERRANTE TO DISMISS**
                                                )    **PURSUANT TO FED.R.CIV.P. 12(b)(2)**
                                                )    **FOR LACK OF PERSONAL**
                                                )    **JURISDICTION**

      This Court lacks personal jurisdiction over Defendants The Law Firm of Tripp Scott,

P.A. ("Tripp Scott"), John M. Mullin, Esq. ("Mullin"), Megan L. Janes, Esq. ("Janes"), Tanya

Bower, Esq. ("Bower"), and Phyllis E. Ferrante ("Ferrante," and collectively, the "Moving

Defendants"), and the Moving Defendants must therefore be dismissed from this action pursuant

to Fed.R.Civ.P. 12(b)(2).

    **1.**     <u>**Brief Statement of the Issue to be Decided and Summary of the Argument**</u>

      The issue to be decided in this motion is whether the Moving Defendants, none of whom

resides in Ohio, should be dismissed from this action for lack of personal jurisdiction.  The

Moving Defendants contend that they should be, because they lack minimum contacts with Ohio

to enable this Court to exercise jurisdiction over them in a manner consistent with the due

process requirements of the United States Constitution.  Also, this Court lacks jurisdiction over

the Moving Defendants under Ohio's long-arm statute.

1

2. **Facts**

a. **The Florida Action**

On April 15, 2013, Fuel Smart Global Corp. ("Global"), a non-party to this action, commenced a civil action ("Florida Action") against Plaintiff Paul Spivak ("Plaintiff" or "Spivak") and non-parties Fuel Smart Corp. ("Fuel Smart") and Intellitronix Corporation ("Intellitronix") in a Broward County, Florida, state court.  A copy of the Complaint in the Florida Action ("Florida Complaint") is attached as Exhibit 1 to this memorandum.  Defendant Tripp Scott is Global's counsel in the Florida Action.  Florida Complaint at 20.  Defendants Mullin and Janes are the Tripp Scott lawyers who have appeared in the Florida Action on Global's behalf.  *Id.*

The Florida Action relates to "a microprocessor technology based computer system," called the "Plug and Play," "that is arguably supposed to help automobiles achieve greater fuel efficiency."  *Id.* at ¶ 21.  Global alleges in the Florida Complaint that it was a party to a written contract with Fuel Smart—the "Master Distributor Agreement"—relating to that technology, and that Fuel Smart materially breached that contract and defrauded Global.  *Id.* at ¶¶ 35-54, 107-134.  It also alleges that Spivak is Fuel Smart's president, *id.* at ¶ 29, and that Spivak fraudulently induced Global to enter into that contract.  *Id.* at ¶¶ 135-150.  It further alleges that Fuel Smart told Global to make certain payments under that contract to Intellitronix—of which Spivak is alleged to be president and a shareholder—and that Intellitronix was unjustly enriched by receiving those payments.  *Id.* at ¶¶ 151-156.

On April 12, 2013, three days before commencing the Florida Action, Global, through Tripp Scott, transmitted a letter (the "Florida Demand Letter") to Spivak, Fuel Smart, Intellitronix, and non-party Olga Smirnova, who is listed in the records of the Ohio Secretary of State's office as Intellitronix's corporate secretary.  A copy of the Florida Demand Letter, which

is attached to Spivak's Complaint as part of Exhibit L, is also attached to this memorandum as
Exhibit 2.  That letter informed its recipients of Global's "legal claims" against them relating to
the "Plug and Play" technology and discussed those claims, conveyed a settlement demand to its
recipients, and indicated that litigation would follow if a settlement was not promptly reached.  A
settlement was not promptly reached and the Florida Action followed.

Spivak was served, and has appeared, in the Florida Action.  Complaint at ¶ 44.  *See also*
Declarations of John M. Mullin ("Mullin Declaration") and Megan L. Janes ("Janes
Declaration"), attached to this memorandum as Exhibits 3 and 4, respectively.

### b.  This Action

Spivak commenced this action on June 18, 2013.  His Complaint reveals that the subject
matter of this action relates directly to that which is at issue in the Florida Action; that is, both
relate to what Spivak refers in his Complaint as the "Fuel Smart Technologies," which he
describes as "a patent pending technology based computer system that helps automobiles achieve
greater fuel efficiency."  Complaint at ¶ 28.  Spivak's Complaint also refers to the same "Master
Distributor Agreement" as that at issue in the Florida Action.  *Id.*

There are seventeen "claims for relief" in Spivak's Complaint.  Of those, some are
directed against "All Defendants" (counts one, two, three, four, ten, eleven, thirteen, and
sixteen); some are directed against "Tripp Scott, P.A. et al," with no identification as to who
constitutes "et al" (counts five, twelve, fourteen, and fifteen); one is against "Tripp Scott, P.A."
(count six); and one is directed against Defendant Paul Ergon ("Ergon") and "Tripp Scott, P.A. et
al," with "et al" again going undefined (count seven).  Four claims (counts eight, nine, thirteen,
and seventeen) are not directed against any of the Moving Defendants.

The gravamen of Spivak's claims against the Moving Defendants can be distilled to these
two contentions:

3

First, Spivak alleges that on or about April l2, 2013, Tripp Scott emailed the Florida Demand Letter to "unknown individuals" and later that day emailed that letter to Intellitronix. Complaint at ¶¶ 37-38.  He contends that the Florida Demand Letter was defamatory.  *Id.* at ¶¶ 37-38, 118, 120, 127.

Second, he alleges that "[o]n or about April 24, 2013," Tripp Scott, "on behalf of defendant Ergon," commenced the Florida Action against "Plaintiff individually, and Plaintiff's companies Fuel Smart Corporation and Intellitronix," *id.*  Spivak, who did not attach a copy of the Florida Complaint to his Complaint, contends that the Florida Action is "vexatious."  *Id.* at ¶ 43, 73, 77, 82, 86, 87, 120.

Aside from twice emailing the Florida Demand Letter and commencing the Florida Action, the only specific conduct alleged in the Complaint which Spivak attributes to any of the Moving Defendants is the following:

- "Defendant Bower created the Master Distributor Agreement." *Id.* at ¶ 29; and
- Tripp Scott "drafted" two "letters of intent" which "Ergon sent … to Plaintiff concerning the purchase of Fuel Smart Technologies." *Id.* at ¶¶ 30, 31 and 35.

As the declarations accompanying this motion reveal, the two emails referred to above were transmitted from Florida; the Florida Action was filed and is being prosecuted in Florida; the Master Distributor Agreement was drafted by Tripp Scott in Florida; and Tripp Scott did not draft the two "letters of intent."  Tripp Scott has never maintained an office or employed personnel in Ohio, has never had an Ohio mailing address or telephone number, and has never owned or leased real property in Ohio.  The same applies for Mullin, Janes, Bower and Ferrante.  Likewise, none of the Moving Defendants has ever appeared in Ohio to meet with Spivak or with anyone else on any matter relating to the subject matter of this action.  The Moving Defendants

lack minimum contacts with Ohio within the purview of the Due Process Clause and must therefore be dismissed from this action pursuant to Rule 12(b)(2) as a matter of law.

**3.** **Law**

Plaintiff contends that this is a diversity action. Complaint at ¶ 14. Accordingly, Ohio law applies to determining whether this Court has personal jurisdiction over the Moving Defendants. *Miller v. AXA Winterthur Ins. Co.* ("*Miller*"), 694 F.3d 675, 678 (6th Cir. 2012).

In *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Circuit 2006), the court identified "a two-step inquiry to determine whether a federal district court sitting in a diversity-of-citizenship case can exercise personal jurisdiction over a defendant: (1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause" (citations omitted).

The court noted that under Ohio law, there are two kinds of jurisdiction that can be exercised over a non-resident defendant: "Jurisdiction may be found to exist either generally, in cases in which a defendant's 'continuous and systematic' conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state, or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum." *Id.*.

This second inquiry—whether a non-resident defendant is subject to an Ohio court's specific jurisdiction—requires a determination of whether that defendant is subject to jurisdiction under Ohio's long-arm statute *and* has sufficient minimum contacts with Ohio so that finding personal jurisdiction does not "offend traditional notions of fair play and substantial justice." *See, e.g., Calphalon Corp. v. Rowlette ("Calphalon")*, 228 F. 3d 718, 721 (6th Cir. 2000) ("[t]he exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and

5

constitutional due process requirements"); *Conn v. Zakharov ("Conn")*, 667 F. 3d 705, 712 (6th Cir. 2012) ("the Due Process Clause requires that the defendant have sufficient minimum contact[s] with the forum state so that finding personal jurisdiction does not offend traditional notions of fair play and substantial justice") (internal quotation marks omitted).

Ohio's long-arm statute, R.C. 2307.382, is not coterminous with the limits of the Due Process Clause. *Estate of Thomson ex rel. Rakestraw v. Toyota Motor Corp.*, 545 F. 3d 357, 361 (6th Cir. 2008). For that reason, when personal jurisdiction is claimed to exist under Ohio's long-arm statute, the court's jurisdictional analysis "requires separate discussions of whether the defendant is amenable to suit under Ohio's long-arm statute and whether due process requirements of the Constitution are met." *Id.* at 361. But, as the Sixth Circuit has also noted, "in evaluating whether personal jurisdiction is proper under Ohio's long-arm statute, we have consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend 'traditional notions of fair play and substantial justice.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (citations omitted); *Cabell Fin. Corp. v. Gurr*, No. 1:12-cv-473, 2012 U.S. Dist. LEXIS 178082 at * 5 (N.D. Ohio Nov. 27, 2012).

In *Southern Machine Co. v. Mohasco Indus. ("Southern Machine")*, 401 F.2d 374, 381 (6th Cir. 1968), the court articulated a three-part test to determine whether specific jurisdiction consistent with federal due process requirements exists over a non-resident defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

The first *Southern Machine* factor—the purposeful availment requirement—is "the *sine qua non* for *in personam* jurisdiction." *Id.* at 381-382. Its purpose is to ensure "that a defendant

will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted); *see also Calphalon*, 228 F.3d at 721-722. Instead, for jurisdiction to attach, "the contacts [must] proximately result from actions by the defendant himself that create a substantial connection with the forum State.  Thus where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there …".  *Burger King*, 471 U.S. at 475 (citations and internal quotation marks omitted.)  Satisfying this factor "is essential to a finding of personal jurisdiction." *Calphalon*, 228 F.3d at 721.

The second *Southern Machine* factor—that the cause of action arise from the defendant's activities in the forum state—requires that a plaintiff's cause of action against a non-resident defendant "have a substantial connection with the defendant's in-state activities." *Southern Machine*, 401 F.2d at 384 at footnote 27.

The third *Southern Machine* factor—a reasonableness inquiry—"consider[s] whether exercising personal jurisdiction over" a non-resident "would comport with traditional notions of fair play and substantial justice." *CompuServe, Inc. v. Patterson ("CompuServe")*, 89 F.3d 1257, 1268 (6th Cir. 1996) (citations and internal quotation marks omitted.)

Plaintiff bears the burden of establishing this Court's personal jurisdiction over the Moving Defendants.  *CompuServe Inc.,* 89 F.3d at 1261-62; *see also Conn,* 667 F. 3d at 711 ("The plaintiff bears the burden of establishing through specific facts that personal jurisdiction exists over the non-resident defendant") (citations and internal quotation marks omitted.)  As will be shown below, he cannot meet that burden.

4.    <u>**Argument**</u>

Plaintiff's First, Second, Third, Fifth and Sixth Claims for Relief are immaterial as a matter of law to this court's jurisdiction inquiry.  Plaintiff's "First Claim for Relief" is titled "Economic Espionage – Against All Defendants - 18 U.S.C. 1831."  His "Second Claim for Relief" is titled "Theft of Trade Secrets – Against All Defendants – 18 U.S.C. 1832."  His "Third Claim for Relief" is titled "Theft by Deception – Against All Defendants – O.R.C. 2913.02."  All three of these claims are predicated on criminal statutes which do not provide for a private right of action.  "In general, a criminal statute does not provide a private cause of action." *Roop v. Walmart Corp.*, No. 4:10-cv-2769, 2011 U.S. Dist. LEXIS 17457 at * 2 (N.D.  Ohio Feb. 22, 2011).  Because "[t]his Court may not assume jurisdiction for a civil action under any of these sources as no private cause of actions exists," *Bey v. State of Ohio*, No. 1:11-cv-01048, 2011 U.S. Dist. LEXIS 101762 at * 5 (N.D.  Ohio Sept. 9, 2011), Plaintiff's First, Second and Third Claims for Relief against the Moving Defendants are immaterial to this Court's jurisdiction analysis.

The same applies to Plaintiff's "Fifth Claim for Relief," titled "Abuse of Process – Against Tripp Scott, P.A., et al – O.R.C. 2323.52" and "Sixth Claim for Relief," titled "Vexatious Litigation – Against Tripp Scott P.A. – O.R.C. 2323.52."  R.C. 2323.52, titled "Civil action to declare person vexatious litigator," is an Ohio statute by which a "[a] person … who has defended against habitual and persistent vexatious conduct *in the court of claims or in a court of appeals, court of common pleas, municipal court, or county court* may commence a civil action *in a court of common pleas* with jurisdiction over the person who allegedly engaged in the habitual and persistent vexatious conduct to have that person declared a vexatious litigator." R.C. 2323.52(B) (emphasis added).  If the defendant is declared to be a vexatious litigator under

that statute, an Ohio common pleas court may enter relief as provided in the statute.  R.C.

2323.52(D).  Nowhere in his Complaint does Plaintiff allege that he "has defended against

habitual and persistent vexatious conduct brought against him by any of the Moving Defendants

"in the court of claims or in a court of appeals, court of common pleas, municipal court, or

county court."  But more fundamentally, R.C. 2323.52 is, by its plain language, a uniquely state

court procedure exercisable exclusively by Ohio common pleas courts, and does not confer upon

litigants a private right of action for damages in federal court.

     For these reasons, Plaintiff's First, Second, Third, Fifth and Sixth Claims for Relief are

immaterial as a matter of law to this Court's jurisdiction inquiry.  But Plaintiff's *entire*

Complaint must be dismissed against the Moving Defendants for another reason:  this Court

lacks general and specific jurisdiction over them.

     **a.**    **The Moving Defendants are Not Subject to this Court's General Jurisdiction**

     Plaintiff has alleged no specific facts in his Complaint demonstrating that any of the

Moving Defendants are subject to the general jurisdiction of this Court and, indeed, they are not.

The only allegation which even attempts to address that issue is a generic one directed solely at

Tripp Scott—not to the other Moving Defendants—in which Plaintiff alleges as follows:

> At all times pertinent hereto, Defendant Tripp Scott, P.A., (hereinafter "Tripp
> Scott") is and was a law firm existing under the laws of the state of Florida and/or
> were licensed to and/or were doing business in the state of Florida and/or
> regularly did or solicited business or engaged in other persistent courses of
> conduct or derived substantial revenue from goods used or consumed or services
> rendered in the state of Ohio.

     That allegation is wrong:  Tripp Scott has never regularly done or solicited business in

Ohio, or engaged in "persistent courses of conduct" in Ohio, or derived substantial revenue for

services rendered in Ohio.  In its almost forty-five years of existence (it was founded in Fort

Lauderdale, Florida, in 1969), Tripp Scott has never maintained an office in Ohio, has never

marketed itself as an Ohio law firm, has never advertised in Ohio, has never employed personnel in Ohio, has never had an Ohio address or Ohio telephone number, and has never owned or leased real property in Ohio.  It neither engages, nor has it ever engaged, in continuous and systematic activity in Ohio.  *See* Declaration of Edward R. Curtis ("Tripp Scott Declaration"), attached as <u>Exhibit 5</u> to this memorandum.

The same applies for the other Moving Defendants:  Mullin, Janes, Bower and Ferrante. Plaintiff does not allege that they are subject to this Court's general jurisdiction, nor in good faith could he:  none of them has ever been admitted to practice law in Ohio or in either of its federal judicial districts, and none of them has ever resided or been in employed in Ohio.  *See* Mullin Declaration" (<u>Exhibit 3</u>), Janes Declaration (<u>Exhibit 4</u>), and the attached Declarations of Tanya Bower ("Bower Declaration") and Phyllis Ferrante ("Ferrante Declaration"), attached respectively as <u>Exhibits 6 and 7</u> to this memorandum.

For these reasons, this Court lacks general jurisdiction over the Moving Defendants.

> **b.** **The Moving Defendants are Also Not Subject to this Court's Specific Jurisdiction**

The Moving Defendants have not purposefully availed themselves of the privilege of acting in Ohio within the meaning of the Due Process Clause, and they therefore lack sufficient minimum contacts with Ohio to warrant this Court's exercise of jurisdiction over them.

As noted above, the only specific instances of conduct which Spivak in his Complaint attributes to the Moving Defendants are the following:

- "On or about April 12, 2013," Tripp Scott emailed the Florida Demand Letter to "unknown individuals."  Complaint at ¶ 37.  Spivak further alleges that Ferrante, a Florida resident and legal assistant at Tripp Scott, *id.* at ¶ 5, sent that email, and that Mullin, a Florida resident and Director at Tripp Scott, *id.* at ¶ 3, signed the Florida Demand Letter.  *Id.* ¶ 37.

- "On or about April 12, 2013," Ferrante emailed the Florida Demand Letter to Intellitronix.  *Id.* at ¶ 38.

- "On or April 24, 2013," Tripp Scott commenced the Florida Action against Spivak and "Plaintiff's companies, Fuel Smart Corporation and Intellitronix." *Id.* at ¶ 43.

- Defendant Bower, a Director of Tripp Scott who was located "at all times pertinent hereto" in Fort Lauderdale, Florida, *id.* at ¶ 13, drafted the Master Distributor Agreement. *Id.* at ¶ 29.

- Tripp Scott drafted two "letters of intent" which "Ergon sent … to Plaintiff concerning the purchase of Fuel Smart Technologies." *Id.* at ¶¶ 30, 31 and 35.

Spivak's Complaint does not allege that any of the Moving Defendants engaged in any activity within Ohio. Of the two emails Spivak complains about, both were transmitted from Florida. *See* Ferrante Declaration (Exhibit 7) at ¶ 5. One of those emails, Spivak contends, was sent to "unknown individuals," Complaint at ¶ 37, which means that Spivak admittedly does not know whether anyone received it at all. And since "unknown individuals" have unknown locations, the transmittal of that email cannot constitute activity within Ohio. The second email was allegedly transmitted to Intellitronix, *id.* at ¶ 38, which is, as Spivak acknowledges in his Complaint, his own company. *Id.* ¶ 43.

The transmittal of these two emails do not suffice to subject the Moving Defendants to this Court's jurisdiction. "The purposeful availment requirement is satisfied when the defendant's contacts create a *substantial connection* with the forum state such that the defendant should reasonably anticipate being haled into court there." *CompuServe*, 89 F.3d at 1263 (emphasis added). Its purpose is to "insure that 'random,' 'fortuitous,' or 'attenuated' contacts do not cause a defendant to be haled into a jurisdiction." *Id.* (citations and internal quotation marks omitted.) Two emails—one sent to "unknown individuals" and another sent to Plaintiff's own company—do not create a "substantial connection" between any of the Moving Defendants and the State of Ohio. Rather, they are "precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the *Burger King* Court rejected as a basis for haling non-resident defendants into foreign jurisdictions." *Kerry Steel, Inc. v. Paragon Industries, Inc. ("Kerry*

*Steel")*, 106 F. 3d 147, 151 (6th Cir. 1997).  In *Kerry Steel*, the district court dismissed an action

for lack of *in personam* jurisdiction and the Sixth Circuit affirmed, noting as follows:

> It is immaterial that Paragon placed telephone calls and sent faxes to Kerry Steel
> in Michigan.  To borrow language employed by this court in [*LAK, Inc. v. Deer
> Creek Enter.("LAK")*, 885 F.2d 1293, 1300 (6th Cir.1989)], "[t]he telephone calls
> and letters on which the plaintiff's claim of jurisdiction primarily depends strike
> us as precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the
> *Burger King* Court rejected as a basis for haling non-resident defendants into
> foreign jurisdictions."

*Kerry Steel*, 106 F.3d at 150.  *See also McMunigal v. Bloch*, No. 1:09-cv-01674, 2010 U.S. Dist.

LEXIS 51329 at * 15 (N.D. Ohio Apr. 21, 2011) and *Hitachi Medical Systems America, Inc. v.*

*St. Louis Gynecology & Oncology, LLC*, No. 5:09-cv-2613, 2011 U.S. Dist. LEXIS 17022 at *

22 (N.D. Ohio Feb. 22, 2011), both quoting *Scullin Steel Co. v. National Ry. Utilization Corp.*,

676 F.2d 309, 314 (8th Cir.1982) for the proposition that "[t]he use of interstate facilities

(telephone, the mail)" is a "secondary or ancillary factor[] and cannot alone provide the

'minimum contacts' required by due process."  *See also Miller,* 694 F. 3d at 680, where the Sixth

Circuit noted that as follows:

> Any contacts Winterthur may have had with Michigan were so attenuated that
> they could not demonstrate purposeful availment of the forum state.  Our decision
> is consistent with case law.  In *Nationwide Mut. Ins. Co.*, 91 F.3d at 795-96, we
> found that due process was not satisfied even though Tryg sent a letter to
> Nationwide's corporate headquarters in Ohio, entered into an agreement with
> Nationwide, sent an agent to Ohio, solicited business from Nationwide in Ohio,
> and realized profits from its contacts with Ohio. Winterthur sent a letter to Miller
> in Michigan and reached an agreement with Miller while both parties were in
> Switzerland, but no more.

> *Calphalon* is also instructive.  There, defendant corresponded with the Ohio plaintiff by

telephone, fax, and mail, and made two visits to Ohio, once for sales training and once to

accompany a client on a tour of plaintiff's facility.  Plaintiff sued defendant in the Northern

District of Ohio, but the court found it lacked personal jurisdiction over defendant, and the Sixth

12

Circuit agreed, finding that "the actual course of dealings between the parties demonstrates that [defendant's] contacts with Ohio were purely 'fortuitous' and 'attenuated.'" *Calphalon*, 228 F. 3d at 722. Here, by comparison, none of the Moving Defendants has ever appeared in Ohio on any matter relating to the subject matter of this lawsuit. *See* Tripp Scott, Mullin, Janes, Bower and Ferrante Declarations, attached.

*Filtrexx International, LLC v. Truelsen*, No. 5:12-cv-58, 2013 U.S. Dist. LEXIS 19536 (N.D. Ohio Feb. 13, 2012) is also on point. An Iowa-based defendant was an exclusive distributor of the Ohio-based plaintiff's products. *Id.* at *4. Their agreement required defendant to attend trainings and purchase an annual minimum quantity of product from plaintiff. *Id.* at *6. Defendant placed orders with plaintiff in Ohio by telephone, facsimile and email, and paid for those orders by mailing checks to plaintiff in Ohio. *Id.* at *7. Defendant's employee also attended three training sessions and a meeting in Ohio. *Id.* at *8. The Court concluded "that defendants' contacts are too 'random, fortuitous, and attenuated' to permit a finding of purposeful availment here" and that plaintiff therefore did not establish "the first prong of the test set forth in *Southern Machine*. As a result," the Sixth Circuit noted, "analysis of the second and third prongs is unnecessary." *Id.* at *42, citing *LAK*, 885 F.2d at 1303.

Given these decisions, it follows that the two emails transmitting the Florida Demand Letter which Spivak attributes to the Moving Defendants are insufficient as a matter of law to subject them to this Court's jurisdiction. The same holds true for their role in prosecuting the Florida Action against Spivak and his companies, Fuel Smart Corporation and Intellitronix. That action was brought and remains pending in a Florida state court, and Spivak has appeared in that action. It is difficult to fathom how one can purposefully avail himself of the privilege of acting in Ohio by bringing a lawsuit in Florida.

13

Finally, as for Spivak's assertions that "Defendant Bower created the Master Distributor Agreement," Complaint at ¶ 29, and that Tripp Scott drafted two "letters of intent" which "Ergon sent … to Plaintiff concerning the purchase of Fuel Smart Technologies" *id.* at ¶¶ 30, 31 and 35, those allegations are jurisdictionally immaterial.  For one thing, the Moving Defendants did not draft those "letters of intent." *See* Tripp Scott Declaration at ¶ 7, Bowers Declaration at ¶ 4, Janes Declaration at ¶ 4 , Mullin Declaration at ¶ 4, and Ferrante Declaration at ¶ 3.  As for the Master Distributor Agreement, that was drafted in Florida.  Bowers Declaration at ¶ 6.  The creation of that agreement in Florida did not establish create a "substantial connection" with the State of Ohio; on the contrary, that is the kind of attenuated contact (if it is contact at all) that cannot constitutionally form the basis for *in personam*  jurisdiction.  "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no *meaningful* contacts, ties, or relations." *Burger King*, 471 U.S. at 471-472, quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945) (emphasis added).

For these reasons, Spivak cannot satisfy the first prong of the *Southern Machine* test— the purposeful availment requirement—and his Complaint fails to present a *prima facie* case to the contrary.  Having failed to satisfy that essential requirement, the Moving Defendants must be dismissed from this action as a matter of law.

***

Even though *LAK* posits that an analysis of the second and third *Southern Machine* factors is unnecessary if plaintiff fails to establish the first, *LAK*, 885 F.2d at 1303, it is worth noting that Spivak cannot establish those other elements, either.

The second *Southern Machine* factor is that plaintiff's cause of action arise from the defendant's activities in the forum state.  Spivak's Complaint alleges no such activity attributable

14

to the Moving Defendants.  The two emails from Tripp Scott about which he complains were transmitted from Florida.  One allegedly went to "unknown individuals," the other went to Spivak's own company, Intellitronix, which is now a defendant in the Florida Action.  The emails transmitted a single demand letter relating to potential litigation against Spivak, Fuel Smart and Intellitronix.  Transmittal of the Florida Demand Letter supports neither specific personal jurisdiction over any of the Moving Defendants nor any cause of action against them.  As noted by the Sixth Circuit *Cadle Co. v. Schlichtmann ("Cadle")*, No. 04-3145, 2005 U.S. App. LEXIS 2097 at *17-18 (6th Cir. Feb. 8, 2005):

> Appellant alternatively claims that Schlichtmann subjected himself to jurisdiction in Ohio when he, as counsel to four Massachusetts residents, mailed Cadle a demand letter in Ohio, outlining various potential claims his clients have against the company and threatening the company with litigation.  We have held that a single letter by an attorney, concerning potential litigation cannot confer specific jurisdiction over the attorney in the addressee's state when the letter merely relates to the cause of action.  *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000).  Furthermore, under Ohio law, parties have absolute immunity from defamation suits arising out of statements made during the course of litigation.  *Erie County Farmers' Ins. Co. v. Crecelius*, 171 N.E. 97, 97-98 (1930).  Here, Schlichtmann's letter was made in the course of representing clients at the outset of litigation.  Thus, Schlichtmann's contact with Ohio through this letter does not support specific jurisdiction, nor does it support an actionable claim by Cadle.[1]

Likewise, the prosecution of the Florida Action does not constitute activity by the Moving Defendants in Ohio.  That action was filed in Florida.  Not Ohio.

---

[1] Referring to the Florida Demand Letter, Spivak alleges in his Complaint that "[t]he defamatory letter sent from Ergon was also addressed to Plaintiff's wife," Complaint at ¶ 129, whom he does not identify in his Complaint.  Olga Smirnova is, upon information and belief, Spivak's wife, and the Florida Demand Letter was addressed to her because she is the corporate secretary of Intellitronix, which was one of the addressees of that letter and is now a defendant in the Florida Action.  *See* Exhibit 8 to this memorandum, which is a certified copy of Intellitronix's "Subsequent Appointment of Agent" filed June 24, 2013 with the Ohio Secretary of State, and which, on page 2, identifies and was signed by Olga Smirnova as corporate secretary of Intellitronix.  In any event, the Florida Demand Letter was not defamatory as a matter of law.  *See Cadle, supra.*

Spivak therefore cannot establish the second prong of the *Southern Machine* test.  Nor can he establish the third:  that the exercise by this Court of personal jurisdiction over the Moving Defendants "would comport with traditional notions of fair play and substantial justice." Aside from the fact that the Moving Defendants lack minimum contacts with Ohio, it also bears mentioning that Spivak brought *this* lawsuit because Global, through Tripp Scott, had first sued Spivak and his companies in Florida.  Rather than file a counterclaim or other claims in the pending Florida Action, Spivak decided to pursue this action here, in what appears to be a misguided tactical judgment.  Whatever his reason for doing so, this much is undeniable:  Global sued Spivak in Florida, that action is pending in Florida, and Spivak has appeared in that action. If he has claims he wishes to assert relating to the subject matter of that action, he should do so there, not here.  Traditional notions of fair play and substantial justice favor efficiency and judicial economy; not piecemeal litigation and forum shopping.

### c.  The Moving Defendants are Not Subject to Ohio's Long-Arm Jurisdiction

The Moving Defendants' lack of minimum contacts with Ohio suffices, on its own, to warrant their dismissal from this action.  But it also warrants mention that they are not subject to Ohio's long-arm jurisdiction, as well.  Nothing in Spivak's Complaint alleges any conduct on the part of the Moving Defendants which would subject them to Ohio's long-arm jurisdiction. Spivak's claims against the Moving Defendants are not based on the Moving Defendants' transacting any business in Ohio, R.C. 2307.382(A)(1), or contracting to supply services or goods in Ohio, R.C. 2307.382(A)(2), or selling warrantied goods within Ohio, R.C. 2307.382(5), or interest in, use, or possession of real property in Ohio, R.C. 2307.382(A)(8), or contracting to insure any person, property, or risk located in Ohio, R.C. 2307.382(A)(9).  And, as discussed above, the transmittal of the Florida Demand Letter and the commencement of the Florida

16

Action did not give rise to "*tortious* injury" in Ohio, as a matter of law.  R.C. 2307.382(A)(3), (4), (6) and (7) (emphasis added).  Consequently, the Moving Defendants are not subject to Ohio's long-arm jurisdiction.  Indeed, it is telling that in the Complaint's only reference to Ohio's long-arm statute—paragraph 16—the Moving Defendants are not even mentioned at all:

> The court also has jurisdiction according to Ohio's Long Arm Statue 2307.382. On or about October 11, 2012, defendant Paul Ergon, a Florida resident, personally visited and toured the Ohio Fuel Smart Corporation facility where the terms of the contract were negotiated.

**5.**    <u>**Conclusion**</u>

For these reasons, the Moving Defendants should be dismissed from this action for lack of personal jurisdiction.

Respectfully submitted,

 */s/ Jeremy Gilman*
Jeremy Gilman (0014144)
Allison E. Taller (0085206)
BENESCH, FRIEDLANDER,
   COPLAN & ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, OH  44114-2378
Phone:        (216) 363-4500
Facsimile:    (216) 363-4588
Email:        jgilman@beneschlaw.com
              ataller@beneschlaw.com

*Attorneys for The Law Firm of Tripp Scott, P.A., John M. Mullin, Esq., Megan L. Janes, Esq., Tanya Bower, Esq., and Phyllis E. Ferrante*

## LOCAL RULE 7.1(F) CERTIFICATE

This is a dispositive motion as defined in this Court's Local Rule 16.1(B)(5). This case has not yet been assigned a case management track. I certify that the memorandum accompanying this motion adheres to the page length limitation for unassigned cases provided for in Local Rule 7.1(F).

 /s/ Jeremy Gilman
*One of the Attorneys for The Law Firm of Tripp Scott, P.A., John M. Mullin, Esq., Megan L. Janes, Esq., Tanya Bower, Esq., and Phyllis E. Ferrante*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of July, 2013, a true and correct copy of the foregoing *Motion of Defendants The Law Firm of Tripp Scott, P.A., John M. Mullins, Esq., Megan L. Janes, Esq., Tanya Bower, Esq., and Phyllis Ferrante to Dismiss Pursuant to Fed.R.Civ.P. 12(B)(2) for Lack of Personal Jurisdiction* and *Memorandum in Support* was filed electronically. Notice of this filing will be sent to all parties by operation of this Court's electronic filing system. Parties may access this filing through the Court's system.

Additionally, a copy has also been sent by regular U.S. mail, postage prepaid upon:

Paul Spivak
9348 Mercantile Drive
Mentor, OH 44060

 /s/ Jeremy Gilman
*One of the Attorneys for The Law Firm of Tripp Scott, P.A., John M. Mullin, Esq., Megan L. Janes, Esq., Tanya Bower, Esq., and Phyllis E. Ferrante*

7749513 v3