IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL SPIVAK, *et al.*, | ) | CASE NO. 1:13 CV 1342 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| THE LAW FIRM OF TRIPP SCOTT, P.A., *et al.*, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendants. | ) | |

## Introduction

Before me by referral[1] in this diversity action for breach of contract and related claims[2] are motions by all defendants remaining in the case under Federal Rule of Civil Procedure 12(b)(2) to dismiss this action for lack of personal jurisdiction.[3] Plaintiffs Paul Spivak and Fuel Smart Corporation (collectively "Spivak") have responded in opposition to

---

[1] ECF # 18. The matter was referred to me under Local Rule 72.1 for pretrial supervision and ruling on non-dispositive matters by United States District Judge Donald C. Nugent.

[2] ECF # 71 (second amended complaint).

[3] ECF # 126 (defendants Advanced Electronic Manufacturing, LLC and Steven Mortensen) (renewing motion filed as ECF # 76); ECF # 128 (defendant Tripp Scott, P.A.) (renewing motion filed as ECF # 74).

all motions.[4] The defendants have replied.[5] The parties participated in an oral argument on the motions.[6]

Spivak has also filed a supplemental memorandum concerning AEM's purported presence within Ohio.[7] AEM has moved to strike that supplemental memorandum[8] and has filed a declaration made by Steven Mortensen in rebuttal to its substance.[9]

For the reasons set forth below, I will recommend that the motions to dismiss for want of personal jurisdiction be granted as to all defendants.

## Facts

The facts relevant to the decision of the present motions are neither extensive nor complex.

Paul Spivak is an Ohio resident and the sole owner and operator of Fuel Smart Corporation.[10] In the latter part of 2012, Paul Ergon, a Florida resident who was once a

---

[4] ECF # 131 (response to motion of Advanced Electronic Manufacturing ); ECF # 132 (response to motion of Steven Mortensen); ECF # 133 (response to motion of Tripp Scott, P.A.).

[5] ECF # 134 (Tripp Scott); ECF # 135 (Advanced Electronic Manufacturing and Steven Mortensen).

[6] ECF # 137.

[7] ECF # 138.

[8] ECF # 139.

[9] ECF # 140.

[10] ECF # 71 at 2.

defendant here,[11] met with Paul Spivak in Ohio about forming a business in Florida to distribute product made by Fuel Smart.[12] To that end, Ergon entered into a confidentiality agreement with Spivak; signed a distributorship agreement with Spivak; and on several occasions proposed purchasing Paul Spivak's interest in Fuel Smart.[13] Further, in early 2013, Ergon, now acting on behalf of his new company – Fuel Smart Global ("FSG") – executed a confidentiality agreement with Advanced Electronic Manufacturing, LLC, which Mortensen signed on AEM's behalf.[14]

Several months later, in April, 2012, Ergon contacted Spivak to claim that the Fuel Smart device that he had received under the terms of the distributor agreement was defective.[15] This set in motion a series of events that unfolded within a matter of days, whereby: (1) an email written and sent by Tripp Scott, P.A., a law firm then representing Ergon, and containing information covered under Ergon's non-disclosure agreement with Spivak, (2) was sent to an email address maintained by Spivak, (3) who then promptly demanded the return of all information that Spivak had provided to Ergon.[16] Thereafter

---

[11] Ergon filed for bankruptcy on December 27, 2013. ECF # 106. Spivak has voluntarily dismissed Ergon and related entities from the case. ECF # 143.

[12] ECF # 71 at 3.

[13] *Id.* at 4.

[14] *Id.*, Ex. C. [The actual exhibit is attached to ECF # 64, which is the first amended complaint.]

[15] ECF # 71 at 4.

[16] *Id.*

Ergon, through Tripp Scott, brought suit against Spivak in Florida alleging, among other things, breach of contract and fraud.[17]

Spivak then brought the present action here claiming, *inter alia*, that all the defendants were co-conspirators in a civil conspiracy to "steal or illegally acquire [Fuel Smart's] confidential information and/or trade secrets."[18] In particular, the second amended complaint alleges that by filing the Florida suit against Spivak, Tripp Scott "maliciously acted in concert with Ergon and/or Ergon P.A. to further the targeting and/or acquisition of Spivak confidential information and/or trade secrets."[19]

Moreover, as concerns Mortensen and AEM, Spivak alleges that both AEM and Mortensen, an officer of AEM, became members of the conspiracy to steal Fuel Smart's trade secrets after the fact when Mortensen, acting for AEM, obtained access to Fuel Smart's trade secrets by signing the confidentiality agreement with Ergon after Ergon returned from his visit with Spivak/Fuel Smart in Ohio.[20] In particular, Spivak maintains that:

- Ergon contacted Mortensen after Paul Spivak had rejected Ergon's offer to buy his interest in Fuel Smart (thus, after Ergon had been to Ohio and signed the confidentiality agreement with Spivak);

- Mortensen knew that Spivak had not consented to any sharing of trade secrets with AEM, and that Ergon had no authority to bind Spivak to any sharing of trade secrets with AEM; but

---

[17] *Id.*

[18] *Id.* at 11.

[19] *Id.*

[20] ECF # 131 at 15-16.

- Nevertheless, Mortensen, for the purpose of improperly obtaining those trade secrets and so with the knowledge that doing so would injure Spivak, entered into the confidentiality agreement with Ergon and obtained access to Spivak's trade secrets for AEM.[21]

Spivak's operative theory before the Court, as underscored by the oral argument on the motions, is one of civil conspiracy, whereby Ergon as the principal in a civil conspiracy improperly obtained trade secrets from Spivak, and Ergon's actions within Ohio in furtherance of that end can now be imputed to the other members of that conspiracy.[22]

## Analysis

### A. Legal standards applicable to Federal Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction

When a court considers a motion to dismiss for lack of personal jurisdiction based solely on written materials and affidavits, "the burden on the plaintiff is relatively slight, [...] and the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal [ ] [...]."[23] A plaintiff need only establish jurisdictional claims with "reasonable particularity," and the court construes the pleadings and affidavits in the light most favorable to plaintiff.[24] The plaintiff has the burden, however, to establish that

---

[21] *Id.*

[22] Transcript of the oral argument of December 4, 2014 ("12/4/14 Tr.") at ___.

[23] *Ampco System Parking v. Imperial Parking Canada Corp.*, No. 1:11CV1172, 2012 WL 1066784, at *2 (N.D. Ohio Mar. 28, 2012) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)).

[24] *Id.*

jurisdiction exists and may not merely stand on his pleadings in the face of a properly supported motion for dismissal.[25] The plaintiff must set forth specific facts showing that the court has jurisdiction.[26] The court will dismiss the complaint if the specific facts that the plaintiff alleges collectively fail to state a prima facie case for personal jurisdiction.[27]

**B.     Specific personal jurisdiction**

As counsel for Spivak acknowledged during the oral argument, the case for personal jurisdiction rests primarily on the theory of "specific personal jurisdiction.[28] The Supreme Court in *Walden v. Fiore*[29] recently emphasized that "specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'"[30] Nevertheless, counsel for Spivak also pressed the argument that the Court has "general personal jurisdiction" over the moving defendants.[31] For general personal jurisdiction, a defendant's affiliations with a state must be so "continuous and systematic" as to render the defendant "essentially at home in the forum state."[32]

---

[25] *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

[26] *Id.*

[27] *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

[28] 12/4/14 Tr. at 8.

[29] *Walden v. Fiore*, 134 S. Ct. 1115 (2014).

[30] *Id.* at 1121, quoting *Keeton v. Hustler Magazine*, 465 U.S. 770, 775 (1984).

[31] 12/4/14 Tr. at 8-9.

[32] *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).

I will, accordingly, address both "specific" and "general" personal jurisdiction on the facts presented here. I will begin with "specific" personal jurisdiction because of Spivak's primary reliance on that theory.

This Court "must apply the law of the forum state to determine whether it may exercise jurisdiction over a non-resident defendant."[33] Ohio law provides for a two-step process to decide whether an Ohio court has such personal jurisdiction.[34] First, the court must determine if Ohio's long-arm statute, Ohio Revised Code § 2307.382, and the applicable Rule of Civil Procedure, Civil Rule 4.3(A), confer personal jurisdiction.[35] If so, the court must then analyze whether exercising personal jurisdiction would deprive the non-resident defendant of the right to due process of law under the Fourteenth Amendment to the United States Constitution.[36] As the Sixth Circuit has observed, "[o]f course, if jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the Ohio long-arm statute, and vice-versa."[37]

---

[33] *Conn v. Zakharov*, 667 F.3d 705, 711 (2012).

[34] *Id.* at 712.

[35] *Id.*

[36] *Id.*

[37] *Id.* at 711-12.

Ohio's long-arm statute does not reach to the limits of the Due Process Clause.[38] A court, therefore, must conduct a "particularized" inquiry under the long-arm statute wholly separate from that under the Due Process Clause.[39]

Spivak relies upon one subsection of the long-arm statute – Ohio Revised Code § 2307.382(A)(6).[40] That subsection requires the establishment of four prerequisites:

(1)     tortious injury in Ohio to any person,

(2)     by an act outside the state,

(3)     committed with the purpose of injuring that person, and

(4)     with the reasonable expectation that some person would be injured in Ohio by that act.[41]

I will assume arguendo that Spivak can make some case for satisfaction of each of these four prerequisites as to the moving defendants. Spivak argues that both plaintiffs suffered injury in Ohio, loss of money, because of acts of the moving defendants in Florida. The moving defendants perpetrated these acts to cause injury with the reasonable expectation that Spivak would suffer injury in Ohio.

Nevertheless, this specific personal jurisdictional inquiry must proceed to the separate and distinct Due Process Clause prerequisites. The Supreme Court's recent unanimous

---

[38] *Id.* at 712, citing *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, ___, 638 N.E.2d 541, 543 (2010).

[39] *Id.*, citing *Goldstein*, 70 Ohio St. 3d 232, 638 N.E.2d at 545 n.1.

[40] 12/4/14 Tr. at 20.

[41] Ohio Rev. Code § 2307.382(A)(6).

decision in *Walden v. Fiore*[42] provides the template for the particularized due process inquiry. In *Walden* the plaintiffs, citizens of Nevada, brought a suit in a Nevada federal district court against Anthony Walden, a citizen of Georgia and a police officer, alleging that Walden prepared a false and misleading affidavit in Georgia that caused injury to the plaintiffs in Nevada.[43] Because Nevada law authorizes its courts to exercise personal jurisdiction to the extent not inconsistent with the United States Constitution,[44] the Court proceeded with the Due Process Clause inquiry.[45]

The Court began by observing that due process in the context of specific personal jurisdiction requires that the defendant have minimum contacts with the forum state.[46] Minimum contacts relate to the relationship among the defendant, the forum, and the litigation.[47] The defendant himself must create those contacts.[48] Contacts of the plaintiff or third parties with the forum will not suffice.[49] The minimum contacts analysis "looks to the

---

[42] *Walden*, 134 S. Ct. 1115.

[43] *Id.* at 1119-20.

[44] The plaintiffs in *Walden* asserted a federal Bivens claim. *Id.* at 1120. That this case involved a different basis for subject matter jurisdiction than that invoked here does not impact the Due Process Clause personal jurisdiction analysis.

[45] *Id.* at 1121.

[46] *Id.*

[47] *Id.*

[48] *Id.* at 1122.

[49] *Id.*

defendant's contacts with the forum State itself, not the defendant's contacts with the persons who reside there.[50]

Addressing the plaintiffs' argument that minimum contacts existed because the defendant intentionally caused injury in the forum, the Court stated: "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum."[51] The Court discussed its opinion in *Calder v. Jones*,[52] a decision relied on by Spivak here.[53] That case involved an allegedly libelous article that appeared in a publication with national circulation.[54] As the Court explained the strength of the defendants' connections to the forum increased because of the nature of the libel tort at issue.[55] The defendants made telephone calls to forum sources for information in the article, wrote about the plaintiff's activities in the forum, and circulated the article widely in the forum.[56] Because publication to third

---

[50] *Id.*

[51] *Id.* at 1123.

[52] *Id.* at 1123-24. *Calder v. Jones*, 465 U.S. 783 (1984).

[53] ECF # 131 at 13-14.

[54] *Walden*, 134 S. Ct. at 1123.

[55] *Id.* at 1123-24.

[56] *Id.*

-10-

parties is a necessary element of libel, the tort actually occurred in the forum.[57] Based on these facts, the requisite minimum contacts existed in *Calder*.[58]

Applying these principles, the *Walden* Court found inadequate minimum contacts of the defendant, Walden, with Nevada.[59] No part of Walden's conduct occurred in Nevada.[60] It did not suffice that Walden directed his conduct at the plaintiffs knowing of their Nevada connections.[61] That the plaintiffs suffered injury in the forum state was jurisdictionally irrelevant in the absence of contact by Walden with the forum state.[62] The Court concluded that the Nevada court lacked personal jurisdiction over Fiore.[63]

Using this same analysis here, the facts viewed in the light most favorable to Spivak contain no evidence of any actions that connect the moving defendants with Ohio. As such the requisite minimum contacts needed to satisfy the Due Process Clause prerequisites do not exist.

---

[57] *Id.* at 1124.

[58] *Id.*

[59] *Id.*

[60] *Id.* at 1125.

[61] *Id.*

[62] *Id.*

[63] *Id.*

Spivak insists, nevertheless, that former defendants Paul Ergon and Fuel Smart Global had the requisite contacts with Ohio and that these contacts attach to the moving defendants as co-conspirators in a civil conspiracy to "steal" Spivak's trade secrets.[64]

Despite the direct representation by Spivak's counsel that no cases exist within this Circuit or District on the question of whether, for the purpose of determining personal jurisdiction, the contacts of one alleged member of a civil conspiracy with the forum state may be attributed to other members of that conspiracy who have no such personal contacts,[65] this theory has been directly considered and rejected twice in this District in cases applying Ohio law.

In *Hollar v. Philip Morris Incorporated*,[66] Judge Nugent, the referring judge here, addressed the question of personal jurisdiction in a diversity case applying Ohio law. He rejected the conspiracy-based argument.

> Since personal jurisdiction must be based on actions and contacts of the specific defendant at issue, *See CompuServe*, 89 F.3d at 1263 and *Dean*, 134 F.3d at 1273, the Court declines to apply the so called "conspiracy theory of jurisdiction" in which the contacts of a defendant's co-conspirators with the

---

[64] 12/4/14 Tr. at 9-11.

[65] At the oral argument here on the question of personal jurisdiction, Spivak's counsel, who advanced the co-conspiracy theory as the sole basis for establishing personal jurisdiction over Mortensen and AEM, directly stated that he was not "able to find anything on point with the Sixth Circuit or Supreme Court ... or Northern District" that addressed this theory. Counsel for each of the moving defendants also represented at the oral argument a lack of knowledge of any conspiracy-personal jurisdiction precedents. *Id.* at 19. The Court's own research quickly identified two cases in which judges in this District considered and rejected this conspiracy theory of jurisdiction. *Id.* at 16.

[66] *Hollar v. Philip Morris Inc.*, 43 F. Supp. 2d 794 (N.D. Ohio 1998).

forum state are attributed to the defendant in order to supply the minimum contacts necessary for personal jurisdiction. Personal jurisdiction over TI must be based on TI's contacts and actions within Ohio.[67]

More recently, Judge Pearson, in another diversity case also applying Ohio law, cited *Hollar* in concluding that "the 'absent co-conspirator' doctrine alleged [as a basis for personal jurisdiction] is not recognized as a means for establishing personal jurisdiction in this district."[68]

The Court has uncovered an additional basis for finding that it has no personal jurisdiction over defendant Tripp Scott. At the oral argument the Court expressed concern that an attorney who represented a party outside of the forum state could come within the personal jurisdiction of the forum court because of minimum contacts of his client with the forum state.[69] Once again Spivak's counsel could cite to no relevant precedent.[70]

But precedent does exist in this District's holding that an attorney cannot conspire with a client in the course of an attorney-client relationship. That is the precise finding of Judge Wells in *Lincoln Electric Company v. Manahan*, who stated that "an attorney cannot,

---

[67] *Id*. at 802 n.7.

[68] *Prakash v. Altadis U.S.A. Inc.*, No. 5:10 CV 33, 2012 WL 1109918, at *18 (N.D. Ohio Mar. 30, 2012).

[69] 12/4/14 Tr. at 21-22.

[70] *Id.* at 21.

-13-

as a matter of law, conspire with his client when acting within the bounds of the attorney-client relationship."[71]

Here, the only actions allegedly taken by Tripp Scott in furtherance of its purported conspiracy with Ergon were the drafting of agreements and the filing of a legal action in Florida on Ergon's behalf. These activities are well-within the scope of the attorney-client relationship. Tripp Scott cannot be a legally cognizable co-conspirator with its client for taking such actions.

Because none of the moving defendants has any contacts with Ohio sufficient to constitute "minimum" contacts for Due Process Clause purposes, this Court has no specific personal jurisdiction over the moving defendants.

## C. General personal jurisdiction

General personal jurisdiction requires that the defendants have "affiliations with the (forum) State ... so 'continuous and systematic' as to render them essentially at home in the forum State."[72] General jurisdiction arises from the defendant's contacts with the forum rather than from contacts with the controversy before the forum court.[73]

---

[71] *Lincoln Elec. Co. v. Manahan*, No. 1:10 CV 724, 2011 WL 3516201, at *6 (N.D. Ohio Aug. 11, 2011) (citation omitted).

[72] *Goodyear*, 131 S. Ct. at 2851.

[73] *Id.*

Here Spivak relies on the conspiracy theory to make Ergon and FSG's contacts with Ohio attributable to the moving defendants.[74] Because this conspiracy theory fails as a jurisdictional argument, as a matter of law, Ergon and FSG's contacts with Ohio, no matter how extensive, do not constitute continuous and systematic conduct of the moving defendants. And as explained above, Tripp Scott's acts in the course of providing legal representation to its clients cannot constitute conspiracy as a matter of law.

Spivak has made a last-minute attempt to create an alternative basis for general personal jurisdiction over AEM by suggesting that it maintains two permanent business locations in Ohio.[75] This attempt is unpersuasive.

Mortensen, for himself and for AEM, has executed an affidavit attesting that AEM is not registered with the Ohio Secretary of State, conducts no business in the state, has no mailing address within the state and no Ohio phone number, employs no one in Ohio, and has never owned or leased real estate in Ohio.[76] Moreover, AEM's "passive" website [in that it is informational only and does not permit interaction with users] lists no sales representatives in Ohio.[77]

Against this sworn information, Spivak points to two locations that appear on a single page result generated by a web search on a site that lists suppliers of products based on the

---

[74] 12/4/14 Tr. at 8-12.

[75] ECF # 138.

[76] ECF # 76, Ex. 2 (Mortensen affidavit) at 2-3.

[77] ECF # 126, Ex. 1 (Mortensen affidavit).

words keyed into the search. In this case, the search command, which appears on the page itself, was simply the words "advanced" "electronic" "manufacturing," and not the entity "Advanced Electronic Manufacturing, LLC." And yet, on that flimsy artifice, Spivak now claims proof that AEM maintains "two permanent locations in Ohio."[78] Given that the search did not specify AEM at all, but rather searched a single supplier site for any entity that would match the words "advanced" "electronic," "manufacturing," the search results, predictably, yielded the locations of companies that, by the website's own terms, supply products in "lighting, machine center repair, sewer cleaning equipment and work area lighting"[79] – none of which describe AEM. Moreover, Mortensen has filed a declaration in rebuttal, stating that AEM has no facilities at the addresses identified by the search.[80]

To assert to the Court that this unsworn search result is sufficient evidence of AEM's general jurisdictional presence in Ohio, contrary to the express affidavit and declaration to the contrary, is unavailing.

## Conclusion

This Court cannot exercise personal jurisdiction, specific or general, over the moving defendants because:

---

[78] ECF # 138 at 1.

[79] ECF # 138, Ex. 1 at 1.

[80] ECF # 140.

- The moving defendants do not have continuous and systematic contacts with Ohio that will support general jurisdiction, and

- The moving defendants' involvement in the facts giving rise to the claims alleged do not constitute "minimum contacts" with this forum sufficient to meet the requisites of the Due Process Clause of the Fourteenth Amendment, contacts needed for specific jurisdiction.

I recommend the granting of the motions of the defendants to dismiss for lack of personal jurisdiction.

Dated: February 11, 2015              s/ William H. Baughman, Jr.
                                      United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[81]

---

[81] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).